# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KEITH E. L.,                    )
                                )
            Plaintiff,          )
                                )
     v.                         )       1:23CV1066
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
            Defendant.[1]       )
```

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Keith E. L., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); Docket Entry 12 (Plaintiff's Reply)). For

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 213-19), alleging a disability onset date of October 19, 2019 (see Tr. 213, 216).[3] Upon denial of that application initially (Tr. 97-106, 127-31) and on reconsideration (Tr. 107-21, 133-37), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 138-39). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-74.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 211-12, 297-300), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2022.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 10 at 1.)

[3] Plaintiff later amended his onset date to March 20, 2021 (see Tr. 38, 228), but the ALJ adjudicated the period from the original alleged onset date of October 19, 2019, to Plaintiff's date last insured for DIB, December 31, 2022 (see Tr. 13, 22). Thus, the undersigned will also consider the entire period from October 19, 2019, to December 31, 2022, on judicial review.

October 19, 2019, through his date last insured of
December 31, 2022.

3. Through the date last insured, [Plaintiff] had the
following severe impairments: transient ischemic attack
(TIA), neuropathy, degenerative joint disease of the
bilateral hips, degenerative joint disease of the left
knee, degenerative joint disease of the left shoulder,
obesity, bi-polar disorder, anxiety, and depression.

. . .

4. Through the date last insured, [Plaintiff] d[id] not
have an impairment or combination of impairments that met
or medically equaled the severity of one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff]
had the residual functional capacity to perform light
work . . . except [he] can perform occasional climbing of
ramps and stairs; no climbing of ladders[,] ropes or
scaffolds; occasional balancing and stooping; and no
kneeling, crouching, or crawling. [Plaintiff] should
avoid concentrated exposure to fumes, odors, dusts,
gases, poor ventilation, dangerous machinery, and
heights. [Plaintiff] is limited to occupations requiring
no more than simple[,] routine[, and] repetitive task[s]
[("SRRTs")], not performed in a fast-paced production
environment, involving only simple work-related
instructions and decisions and relatively few workplace
changes. [Plaintiff] is further limited to occupations
requiring no more than occasional interaction with co-
workers and members of the general public. [Plaintiff]
will be able to maintain concentration[,] persistence and
pace for 2-hour increments.

. . .

6. Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10. Through the date last insured, considering
[Plaintiff]'s age, education, work experience, and
residual functional capacity, there were jobs that

3

existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from October 19, 2019, the
alleged onset date, through December 31, 2022, the date
last insured.

(Tr. 13-22 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

5

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

_____

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four

_____

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to include in the ALJ's assessment of Plaintiff's RFC the 'persuasive' opinion of [consultative psychological examiner] J. Craig Hunt, Psy.D. that Plaintiff 'could have moderate to marked difficulty tolerating the

---

after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

stress associated with day-to-day work activity'" (Docket Entry 9 at 6 (bold font and block formatting omitted) (quoting Tr. 20 & 956); see also Docket Entry 12 at 1-3);

2) "[t]he ALJ erred by citing Plaintiff's performance of [activities of daily living] as a reason to discount Plaintiff's impairment severity without accounting for countervailing evidence regarding the nature and extent of the activities" (Docket Entry 9 at 12 (bold font and block formatting omitted); see also Docket Entry 12 at 3-5); and

3) "[t]he ALJ erred by failing to explain how Plaintiff's limited performance of [activities of daily living] demonstrates an ability to perform full-time, competitive employment" (Docket Entry 9 at 18 (bold font and block formatting omitted); see also Docket Entry 12 at 5-6).

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 3-18.)

## 1. Dr. Hunt's Stress Tolerance Opinion

In Plaintiff's first issue on review, he argues that "[t]he ALJ erred by failing to include in the ALJ's assessment of Plaintiff's RFC the 'persuasive' opinion of [Dr.] Hunt[] that Plaintiff 'could have moderate to marked difficulty tolerating the stress associated with day-to-day work activity.'" (Docket Entry 9 at 6 (bold font and block formatting omitted) (quoting Tr. 20 & 956); see also Docket Entry 12 at 1-3.) In that regard, Plaintiff

9

deems it "reasonable to expect that an individual with 'moderate to marked difficulty tolerating the stress associated with day-to-day work activity' would be off task more than ten percent of the day outside of standard breaks and/or would be absent from work, be late to work, or depart early from work more than one time per month" (Docket Entry 9 at 10 (quoting Tr. 956)), and notes that the VE "testified[ that] employers would [not] tolerate" that degree of off-task time or absence (id. (citing Tr. 72)). According to Plaintiff, the Court's decision in *Chalk v. Kijakazi*[, No. 1:20CV1174, 2021 WL 5014261 (M.D.N.C. Oct. 28, 2021) (unpublished), recommendation adopted, 2021 WL 8322641 (M.D.N.C. Nov. 23, 2021) (unpublished) (Eagles, J.)] supports remand" (id. (bold font and underscoring omitted)) because "[t]he Court [in Chalk] found remand required where the ALJ omitted from the RFC without explanation a limitation from a medical opinion found 'persuasive'" (id. at 11 (quoting Chalk, 2021 WL 5014261, at *5)). For the reasons that follow, those arguments miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very

heavy).  See 20 C.F.R. § 404.1567.  Any non-exertional limitations
may further restrict a claimant's ability to perform jobs within an
exertional level.  See 20 C.F.R. § 404.1569a(c).

    "The RFC assessment must include a narrative discussion
describing how the evidence supports each conclusion, citing
specific medical facts (e.g., laboratory findings) and nonmedical
evidence (e.g., daily activities, observations). . . .  The [ALJ]
must also explain how any material inconsistencies or ambiguities
in the evidence in the case record were considered and resolved,"
and "[i]f the ALJ's RFC assessment conflicts with an opinion from
a medical source, the [ALJ] must explain why the opinion was not
adopted."  Social Security Ruling 96-8p, Titles II and XVI:
Assessing Residual Functional Capacity in Initial Claims, 1996 WL
374184, at *7 (July 2, 1996) ("SSR 96-8p") (emphasis added).
Although the ALJ need not discuss every piece of evidence in making
an RFC determination, see Reid v. Commissioner of Soc. Sec., 769
F.3d 861, 865 (4th Cir. 2014), he or she "must both identify
evidence that supports his [or her] conclusion and build an
accurate and logical bridge from that evidence to [that]
conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)
(internal emphasis, quotation marks, and brackets omitted).  Here,
the ALJ's decision supplies the necessary "accurate and logical
bridge," id. (internal quotation marks omitted), between his
crediting of Dr. Hunt's opinion (see Tr. 20) that Plaintiff "could

11

have moderate to marked difficulty tolerating the stress associated with day-to-day work activity" (Tr. 956) and the absence of allowances for off-task time and/or work absences in the RFC assessment (see Tr. 16).

Following a consultative psychological examination on August 25, 2022, Dr. Hunt provided the following opinions regarding Plaintiff's mental functioning:

> [Plaintiff] appears to have the intellectual capacity to perform [SRRTs] as well as understand, retain, and follow instructions based on his presentation and mental status response. Psychiatric symptoms could cause moderate complications for all the aforementioned. Sustained performance of the previous is uncertain given his physical complaints. He demonstrated adequate interpersonal behavior yet could have mild to moderate difficulty interacting effectively with peers, coworkers, and supervisors due to complications from mood and diminished stress tolerance. He demonstrated adequate to marginal concentration, persistence, and pace based on his mental status response. He could have moderate to marked difficulty tolerating the stress associated with day-to-day work activity due to the depletion of coping resources related to chronic pain and illness as well as mental health concerns. Based on his history, he appears capable of conforming to social standards and complying with rules and regulations, as well as[] cooperating with authority figures. His prognosis is guarded given his medical condition. . . . [Plaintiff] appears capable to manage funds based on his overall cognitive abilities and mental status.

(Tr. 956-57 (emphasis added).)

The ALJ, in turn, analyzed Dr. Hunt's opinions as follows:

> The medical opinion of [Dr.] Hunt [] is persuasive. . . . [Dr. Hunt] understood [Plaintiff]'s impairments because [Dr. Hunt] actually examined [Plaintiff]. Further, the objective medical evidence supports the opinion. In addition, the opinion is

12

consistent with evidence from other medical or nonmedical sources.  Accordingly, this opinion is <u>persuasive</u>.

(Tr. 20 (emphasis added) (internal parenthetical citation omitted).)

Most significantly, Plaintiff provides <u>no</u> support for his assertion that "[i]t is <u>reasonable to expect</u> an individual with 'moderate to marked difficulty tolerating the stress associated with day-to-day work activity' would be off task more than ten percent of the day outside of standard breaks and/or would be absent from work, be late to work, or depart early from work more than one time per month."  (Docket Entry 9 at 10 (emphasis added) (quoting Tr. 956).)  That assertion glosses over the fact that, according to the applicable regulations, a moderate-to-marked limitation falls between a "fair" ability and a "seriously limited" ability to tolerate stress, <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2, and does <u>not</u> reflect a disabling level of limitation, <u>see</u> <u>Uplinger v. Berryhill</u>, No. 18CV481, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25, 2019) (unpublished) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to [SRRTs] in a work environment free of fast-paced production requirements."); <u>Miller v. Berryhill</u>, No. 16CV6467, 2017 WL 4173357 (W.D.N.Y. Sept. 20, 2017) (unpublished) ("[O]pinions assigning 'marked' limitations in

13

various work-related functions do not conclusively demonstrate that a claimant is unable to work.").

That argument also ignores the salient fact that Dr. Hunt, notwithstanding his opinion that Plaintiff "<u>could</u> have moderate to marked difficulty" with stress tolerance (Tr. 956 (emphasis added)), ultimately believed Plaintiff remained capable of performing SRRTs (<u>see</u> <u>id.</u>). See <u>Lewen v. Commissioner of Soc.</u> <u>Sec.</u>, 605 F. App'x 967, 968-69 (11th Cir. 2015) (per curiam) ("[T]here is no indication that the doctors, by opining that [the plaintiff] might have difficulties dealing with stress, . . . meant that these limitations would limit her ability to work a full work day/week. These doctors opined that, despite these limitations, [the plaintiff] could perform simple routine tasks."); <u>Shirback v.</u> <u>Commissioner of Soc. Sec.</u>, No. 18CV01222, 2020 WL 247304, at *4 (W.D.N.Y. Jan. 16, 2020) (unpublished) (deeming "RFC for simple routine work [] not inherently inconsistent with [moderate] limitations in the plaintiff's ability to deal with stress, . . . particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing [SRRTs]").

Moreover, Plaintiff's own statements and the opinion evidence do not support disabling off-task and/or absence limitations arising out of his difficulty handling stress. Although Plaintiff told Dr. Hunt that stress triggered his panic attacks, he also

14

stated that his last panic attack occurred in September 2021, nearly a year prior to Dr. Hunt's examination. (See Tr. 954.) Further, at the hearing, Plaintiff did not cite an inability to tolerate stress as a reason one of his prior jobs ended. (See Tr. 44 (citing inability to climb multiple flights of stairs and use vacuums and leaf blowers on stairs as reason property maintenance job ended), 46-47 (indicating "forgetting . . . things" and "trouble walking" led to landscaping job loss).) Additionally, neither the state agency psychological consultants nor Dr. Hunt opined that Plaintiff's difficulty tolerating stress would cause him to experience work-preclusive off-task time and/or work absences. (See Tr. 102-04, 113, 118-19, 956-57.)

Indeed, the ALJ found Plaintiff only moderately limited in his ability to concentrate, persist, and maintain pace (see Tr. 15), and expressly found in the RFC that Plaintiff "w[ould] be able to maintain concentration[,] persistence and pace for 2-hour increments" (Tr. 16 (emphasis added)), a finding Plaintiff did not challenge (see Docket Entries 9, 12). Under such factual circumstances, Plaintiff's assertion that a moderate-to-marked difficulty tolerating work stress would cause work preclusive off-task time and/or work absences amounts to sheer conjecture. See Latisha G. v. O'Malley, No. 1:22CV793, 2024 WL 1142651, at *6 (M.D.N.C. Mar. 15, 2024) (unpublished) (Peake, M.J.) ("[The p]laintiff, who bears the burden of proving disability, presents no

15

evidence, other than her own testimony, that her headaches would cause any specific work limitations. . . . [T]he ALJ was not required to include further restrictions regarding . . . time off task given the lack of support for such limitations . . . . Similarly, [the p]laintiff's argument that migraines would cause her to miss two or more days of work per month, and therefore would be disabling, amounts to nothing more than conjecture. In fact, [the p]laintiff herself never testified that she would require such a restriction. Moreover, none of [the p]laintiff's providers or other medical sources opined that [the p]laintiff's headaches [would] cause[ work absences] during the time period in question.").

In addition, Plaintiff fails to explain why the ALJ's inclusion of significant mental limitations in the RFC, i.e., SRRTs, no "fast-paced production environment[s]," "simple work-related instructions and decisions," "relatively few workplace changes," and "no more than occasional interaction with co-workers and members of the general public" (Tr. 16), did not adequately account for Plaintiff's moderate-to-marked difficulty with stress tolerance. Notably, numerous courts have found similar limitations sufficiently accounted for moderate (or greater) difficulties with stress tolerance. See Lewen, 605 F. App'x at 968 ("[A]ny need to limit [the plaintiff]'s ability to . . . deal with stress . . . — opinions that [the plaintiff] argues are omitted from the ALJ's

16

decision — is accounted for by the ALJ limiting [the plaintiff] to simple tasks and unskilled work with little interaction with the public and supervisors."); <u>Hill v. Commissioner of Soc. Sec.</u>, No. 18CV1161, 2020 WL 836386, at *4-5 (W.D.N.Y. Feb. 20, 2020) (unpublished) (finding that RFC limitations to "[SRRTs], [] simple work-related decisions, and [] only occasional interaction with coworkers and the public . . . adequately accounted for [the plaintiff]'s <u>moderate to marked</u> stress-related limitations" (emphasis added)); <u>Alexandrea R. R. v. Berryhill</u>, No. 18CV121, 2019 WL 2269854, at *5-7 (N.D.N.Y. May 28, 2019) (unpublished) (holding that ALJ accounted for "<u>moderate to marked</u> limitation in the ability to . . . appropriately deal with stress . . . by assessing a number of limitations in [the plaintiff]'s ability to perform work-related mental tasks, and by including a number of specific restrictions in recognition of [the] plaintiff's ability to handle work-related stressors," including "simple decisions" and "little change in daily routine, work duties or processes" (emphasis added)); <u>Moxham v. Commissioner</u>, No. 16CV1170, 2018 WL 1175210, *9 (N.D.N.Y. Mar. 5, 2018) (unpublished) (holding that the plaintiff "fail[ed] to illustrate how the mental limitations included in the ALJ's RFC (simple tasks, simple instructions, frequent interaction with supervisors, coworkers, and the public, and decisions on simple work-related matters) d[id] not adequately account" for "<u>moderate-to-marked</u> limitations in appropriately dealing with

17

stress" (emphasis added)); <u>Messerli v. Berryhill</u>, No. 1:16CV800,
2017 WL 3782986, at *9-11 (E.D. Cal. Aug. 31, 2017) (unpublished)
(finding that, even if ALJ had "wholly credited" consultative
psychological examiner's opinion that the plaintiff's "ability to
deal with the usual stress encountered in a competitive workplace
is <u>moderately to seriously</u> impaired," the RFC's limitation to
simple, repetitive tasks "would not be disturbed resulting in the
same conclusion of non-disability").

Furthermore, although, as discussed above, Plaintiff's
testimony and other statements did not identify any <u>work-related</u>
stress triggers (<u>see</u> Tr. 44 (citing inability to climb multiple
flights of stairs and use vacuums and leaf blowers on stairs as
reason property maintenance job ended), 46-47 (indicating
"forgetting . . . things" and "trouble walking" led to landscaping
job loss)), Dr. Hunt linked Plaintiff's "mild to moderate
difficulty interacting effectively with peers, coworkers, and
supervisors," in part, to "<u>diminished stress tolerance</u>" (Tr. 956
(emphasis added)). Thus, the ALJ's limitation to "no more than
occasional interaction with co-workers and members of the general
public" (Tr. 16) <u>specifically</u> accounts for Dr. Hunt's stress-
related opinion, <u>see</u> <u>Gomez v. Saul</u>, No. 19CV9278, 2020 WL 8620075,
at *30 (S.D.N.Y. Dec. 23, 2020) (unpublished) ("'[A]n RFC
determination may adequately account for a claimant's
stress-related limitations' by precluding <u>triggers</u> of the

18

plaintiff's stress that are apparent from the record, 'even without explicitly referencing a stress limitation.'" (quoting <u>Herb v. Commissioner of Soc. Sec.</u>, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019))), <u>recommendation adopted sub nom.</u> <u>Gomez v. Commissioner of Soc. Sec.</u>, 2021 WL 706744 (S.D.N.Y. Feb. 22, 2021) (unpublished).

The above discussion also demonstrates why <u>Chalk</u> does not aid Plaintiff's cause. In <u>Chalk</u>, the Court held that, "[d]espite finding persuasive [the consultative psychological examiner]'s opinion that [the p]laintiff could sustain attention to perform <u>simple repetitive tasks</u>, the ALJ neither included a limitation to <u>simple repetitive tasks</u> in the RFC, nor explained why he omitted such a restriction," and deemed that error prejudicial, because "th[e] Court c[ould ]not determine whether the jobs cited by the VE could accommodate a limitation to <u>simple repetitive tasks</u>." <u>Chalk</u>, 2021 WL 5014261, at *5 (emphasis added) (internal quotation marks and parenthetical citations omitted). Thus, in <u>Chalk</u>, the ALJ had specifically credited the limitation the plaintiff argued the RFC lacked, i.e., simple repetitive tasks. <u>See</u> <u>id.</u> In contrast, Plaintiff contends the ALJ here should have included in the RFC limitations to work-preclusive off-task time and/or work absences – limitations neither inherently implied by a moderate-to-marked stress-tolerance limitation nor supported by Plaintiff's own statements or the opinion evidence.

In sum, Plaintiff's first assignment of error falls short.

19

## 2. Evaluation of Plaintiff's Daily Activities[8]

### a. Qualifications on Daily Activities

Plaintiff's second issue on review contends that "[t]he ALJ erred by citing Plaintiff's performance of [activities of daily living] as a reason to discount Plaintiff's impairment severity without accounting for countervailing evidence regarding the nature and extent of the activities." (Docket Entry 9 at 12 (bold font and block formatting omitted); see also Docket Entry 12 at 3-5.) More specifically, Plaintiff argues that "the ALJ erred by [1)] ignoring or minimizing qualifying information regarding the nature and extent of Plaintiff's [daily activities] and using that inaccurate summary to conclude Plaintiff's [daily activities] were inconsistent with his claim for disability" (Docket Entry 9 at 16 (citing Tr. 15-20); see also id. at 12 (quoting Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 99 (4th Cir. 2020), for proposition that "'[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them'" (italics added to match Arakas)), and 2) by "fail[ing] to address Plaintiff's brother's function report at all, drawing into question whether the ALJ reviewed or was aware of Plaintiff's brother's statements" (id. at 16 (citing Tr. 7-22, and referencing Tr. 243-50)).

---

[8] As Plaintiff's second and third issues on review both concern the ALJ's evaluation of Plaintiff's ability to engage in daily activities (see Docket Entry 9 at 12-20; see also Docket Entry 12 at 3-6), the Court will address them together.

As part of those arguments, Plaintiff faults the ALJ for "describ[ing] Plaintiff as being capable of a 'wide range of ordinary tasks,'" and asserts that "[he] is capable of neither a 'wide range' of tasks nor are the tasks he performs 'ordinary.'" (Id. at 16 (quoting Tr. 19-20).) In particular, Plaintiff maintains that, "[w]hile the ALJ noted Plaintiff performed chores with breaks, the ALJ failed to note Plaintiff required reminders and encouragement to perform his [daily activities], required assistance managing his finances, sometimes had to stop shopping due to his symptoms and return home without the items he needed, and did not complete his chores up to the standards of the brother with whom he lived." (Id. (citing Tr. 15, 60, 62, 245-47).) Plaintiff further points out that his "brother reported Plaintiff's performance of daily activities was limited by his propensity to stare at the walls when depressed." (Id. (citing Tr. 244, 247).)

The ALJ noted that Plaintiff "socialize[d] through occasional church attendance" and "ha[d] friends that visit[ed] occasionally" in support of the ALJ's finding of moderate limitation in Plaintiff's ability to interact with others at steps two and three of the SEP, and further noted that Plaintiff "perform[ed] personal care activities" and "[h]ousehold chores includ[ing] dishes, laundry, and vacuuming with breaks" to support the ALJ's determination that Plaintiff had mild limitation in his ability to adapt and manage himself. (Tr. 15 (emphasis added).) The ALJ

21

thereafter found that "[p]erformance of th[at] wide range of ordinary tasks [wa]s inconsistent with moderate limitations and cast[ed] doubt on th[e] opinion [of the reconsideration-level state agency psychological consultant]" (Tr. 19), and "on th[e] opinion [of consultative medical examiner Salematou Diallo, CNP ('CNP Diallo')]" (Tr. 20).

The ALJ's citation of Plaintiff's ability to attend church and socialize occasionally, perform personal care, and complete chores with breaks (see Tr. 15) certainly described "ordinary tasks" (Tr. 19-20), although reasonable minds could differ on whether those activities amounted to a "wide range" of tasks (id.). Nevertheless, Plaintiff has not shown that the ALJ mischaracterized or overstated Plaintiff's ability to engage in daily activities. Although the ALJ did not expressly discuss Plaintiff's testimony that, on occasion, he had to stop shopping "because [he] felt like [he] was going to fall out" and sit in his car for "five minutes or so before [he] even head[ed] home" (Tr. 60), the ALJ did not rely on Plaintiff's ability to shop at any point in the ALJ's decision (see Tr. 13-22). Moreover, although the ALJ did not address the statements of Plaintiff's brother that Plaintiff needed reminders and encouragement to perform his daily activities (see Tr. 245, 247), did not perform chores up to his brother's standards (see Tr. 245), required assistance with his finances (see Tr. 247), and watched television, listened to music, and read "when ever [sic] he

22

[wa]s not depressed and starring [sic] at walls" (id.),[9] the ALJ did not cite Plaintiff's abilities to handle his finances, watch television, listen to music, or read as reasons supporting the ALJ's finding of non-disability (see Tr. 13-22), and Dr. Hunt's consultative examination reflects that Plaintiff "performs personal care activities" and "[h]ousehold chores includ[ing] dishes, laundry, and vacuuming with breaks" (Tr. 954), which matches verbatim the ALJ's description of Plaintiff's abilities (compare Tr. 15, with Tr. 954). To the extent conflicts exist in the record as to Plaintiff's performance of daily activities, the ALJ must

---

[9] The ALJ erred by failing to address the function report submitted by Plaintiff's brother. Plaintiff's brother constitutes a "[n]onmedical source" under the regulations. 20 C.F.R. § 404.1502(e)(4) (listing "[f]amily members" as nonmedical sources). Under amended regulations (applicable to claims like Plaintiff's filed on or after March 27, 2017 (see Tr. 213-19)), ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) of [20 C.F.R. § 404.1520c,]" 20 C.F.R. § 404.1520c(d) (emphasis added), which set forth the factors, including consistency and supportability, that ALJs must consider when evaluating the persuasiveness of opinions from medical sources, see 20 C.F.R. § 404.1520c(a)-(c). Plaintiff did not address Section 404.1520c(d) in his arguments (see Docket Entries 9, 12), and the Commissioner takes the position that the ALJ's failure to address the function report of Plaintiff's brother "is consistent with the regulations, which state '[the ALJ is] not required to articulate how [h]e considered evidence nonmedical sources'" (Docket Entry 11 at 14 (quoting 20 C.F.R. § 404.1520c(d))). The Court has previously recognized that, "[a]lthough . . . the law remains unsettled whether ALJs must provide any articulation of their consideration of nonmedical evidence," Alyssa W. v. O'Malley, No. 1:22CV919, 2024 WL 416392, at *11 (M.D.N.C. Feb. 5, 2024) (unpublished) (citing Ellen S. v. Kijakazi, No. 5:20CV1940, 2022 WL 221225, at *7 (C.D. Cal. Jan. 24, 2022) (unpublished) ("The question of how the 2017 rule change impacts the ALJ's obligations with respect to addressing lay witness testimony is unanswered in the current caselaw.")), "the majority of cases to address the issue have held that Section . . . 404.1520c(d)[] did not remove the articulation requirement altogether and continues to obligate ALJs to provide some explanation of how they considered nonmedical evidence," id. For the reasons explained below, however, that error by the ALJ remains harmless, because Plaintiff has not shown that remand for the ALJ to further consider Plaintiff's daily activities would result in a different outcome in his case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

resolve such conflicts in the evidence, see Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."), and the ALJ did not err by opting to credit Plaintiff's report to Dr. Hunt reflecting a greater ability to perform those activities, see Footman v. Kijakazi, No. 21-1116, 2023 WL 1794156, at *2 (4th Cir. Feb. 7, 2023) (unpublished) (holding that ALJ need not "list[ ] every single additional qualifying statement about the extent to which [the plaintiff] can perform daily activities, [as long as] the ALJ [ ] demonstrate[s] that []he adequately considered them and found them to be inconsistent with specific, objective evidence in the record").

Significantly, even assuming, arguendo, that the ALJ erred by failing to accurately describe Plaintiff's ability to engage in daily activities (and did err by failing to address the function report from Plaintiff's brother), Plaintiff has not shown how those errors prejudiced him. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Plaintiff contends that, "where, as in the present case, an ALJ cites [daily activities] to 'discount the impact of [the plaintiff's] impairments on [his] ability to perform basic work activities and

24

to discount the credibility of [the p]laintiff's allegations generally[,]' the ALJ has assigned [daily activities] a '<u>pivotal role</u> in [the ALJ's] RFC assessment.'" (Docket Entry 12 at 4-5 (quoting <u>Harris v. Kijakazi</u>, No. 1:21CV99, 2022 WL 3595192, at *4 (M.D.N.C. Aug. 23, 2022) (unpublished) (Peake, M.J.) (emphasis added), <u>recommendation adopted</u>, 2022 WL 17831952 (M.D.N.C. Sept. 13, 2022) (unpublished) (Eagles, J.)).) Here, in contrast, the ALJ relied on Plaintiff's ability to perform daily activities as just one of multiple factors to support the ALJ's findings of moderate limitation in Plaintiff's ability to interact with others and mild limitation in his ability to adapt/manage himself at steps two and three of the SEP (<u>see</u> Tr. 15), and again as one of multiple factors to discount the opinions of the reconsideration-level state agency psychological consultant (<u>see</u> Tr. 19) and consultative medical examiner CNP Diallo (<u>see</u> Tr. 20). Plaintiff did not challenge any of those findings by the ALJ (<u>see</u> Docket Entries 9, 12) and, unlike in <u>Harris</u>, the ALJ here did not expressly rely on Plaintiff's daily activities to "discount the credibility of Plaintiff's allegations generally," <u>Harris</u>, 2022 WL 3595192, at *4. <u>Harris</u> thus does not support remand here.

**b. Daily Activities as Evidence of Sustained Work Ability**

Plaintiff's third issue on review argues that "[t]he ALJ erred by failing to explain how Plaintiff's limited performance of [daily activities] demonstrates an ability to perform full-time,

25

competitive employment." (Docket Entry 9 at 18 (bold font and block formatting omitted); see also Docket Entry 12 at 5-6.) In particular, Plaintiff asserts that "[t]he ALJ failed to explain how occasional church attendance, occasional visits with friends (friends of Plaintiff's brother), performing personal hygiene (with reminders and wearing comfortable clothes), watching television, spending time with dogs, and taking breaks while doing dishes, laundry (not anymore after having 'messed up a bunch of clothes and stuff'), and vacuuming (with lists and daily reminders but still not meeting his brother's standards) undermines Plaintiff's testimony regarding his inability to return to full-time competitive employment." (Docket Entry 9 at 18 (quoting Tr. 62, and citing Tr. 15-20).) According to Plaintiff, "the [United States Court of Appeals for the] Fourth Circuit has noted[ that] a[] claimant's ability to perform his own [daily activities] does not provide reliable indicia of his ability to engage in competitive employment given the lack of employer performance standards when performing activities for oneself at one's own pace." (Id. at 19 (citing Arakas, 983 F.3d at 101).)

That argument fails for the simple reason that the ALJ here did not discuss Plaintiff's ability to engage in daily activities as evidence of functions Plaintiff could perform in sustained, competitive employment. Rather, as discussed above, the ALJ cited Plaintiff's daily activities as just one factor supporting the

26

ALJ's findings of moderate and mild limitations in two broad areas of mental functioning (see Tr. 15) and as just one factor to discount two medical opinions (see Tr. 19-20). See Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) ("[The plaintiff] claims that the ALJ erred in assessing [the plaintiff]'s daily activities as evidence of [his] ability to work for an entire day. However, the ALJ cited [the plaintiff]'s daily activities for purposes of the credibility determination and not as examples of the functions [the plaintiff] could perform for an entire day."); Katerina M. L. v. O'Malley, No. 1:22CV932, 2024 WL 110682, at *11 (M.D.N.C. Jan. 10, 2024) (unpublished) ("[The p]laintiff contends that her ability to engage in [] daily activities did not demonstrate that she could perform competitive full-time work[;] . . . however, the ALJ appropriately considered [the p]laintiff's daily activities 'not as examples of the functions [the p]laintiff could perform for an entire day' but rather to evaluate whether her reported symptoms were fully consistent with the record." (quoting Ladda, 749 F. App'x at 173 n.4) (internal quotation marks, brackets, and parenthetical citations omitted).

Put simply, Plaintiff's second and third assignments of error fail as a matter of law.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

                                             /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                                 **United States Magistrate Judge**

February 18, 2025